UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EDWARD PLAINTIFF,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C. GONZALES, et al.,<br><br>　　　　　Defendants. | No. 1:23-cv-00062-SAB (PC)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANTS<br><br>(ECF No. 47) |

Plaintiff John Edward Plaintiff is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. Both parties consented to United States Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 25.)

Currently before the Court is Defendants' motion for summary judgment, filed November 15, 2024. (ECF No. 47.)

**I.**

**BACKGROUND**

This action proceeds on Plaintiff's First Amendment expression-of-speech claim against Defendants correctional counselors Gonzales and Leyva.

Defendants filed an answer to the operative complaint on November 29, 2023. (ECF No. 32.)

On January 4, 2024, the Court issued the discovery and scheduling order. (ECF No. 36.)

1

Defendants filed the instant motion for summary judgment on November 15, 2024. (ECF No. 47.) Plaintiff filed an opposition on January 21, 2025 and supplemental opposition on January 22, 2025. (ECF Nos. 53, 54.)

After receiving an extension of time, Defendants filed a reply on March 14, 2025. (ECF No. 58.) Plaintiff filed a sur-reply on March 31, 2025.[1] (ECF No. 59.)

## II.

## LEGAL STANDARD

### A.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

---

[1] Neither the Federal Rules of Civil Procedure, nor the Local Rules for the Eastern District of California permit the filing of a sur-reply as a matter of right. See Garcia v. Biter, 195 F.Supp.3d at 1131 (E.D. Ca. July 18, 2016) (noting the plaintiff did not have a right to file a sur-reply under the local rules or under the Federal Rules of Civil Procedure). Courts, however, have discretion to permit, or preclude, a sur-reply. Id. at 1133 (citations omitted); see also U.S. ex rel. Meyer v. Horizon Health Corp., 565 F. 3d 1195, 1203 (9th Cir. 2009) (holding that district court did not abuse discretion in refusing to permit "inequitable sur-reply"). A district court may allow a sur-reply to be filed where there is a valid reason for such additional briefing, such as to prevent unfair prejudice. Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005). "In this Circuit, courts are required to afford pro se litigants additional leniency." Hester v. Clendenin, 2022 WL 2541632, at *2 (E.D. Cal. Jul. 7, 2022) (citing Wilhelm v. Rotman, 680 F.3dd 1113, 1121 (9th Cir. 2012). While Plaintiff did not first seek leave from the Court to file a sur-reply, the Court will not strike it given Plaintiff's pro se status and it is only 4 pages in length. See U.S. Equal Employment Opportunity Commission v. Sunshine Raisin Corporation, 2023 WL 4352426 (E.D. Cal. Jun. 13, 2023) (denying motion to strike reply because it exceeded page limits set by the court's case management and scheduling order) (citation omitted).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Complaint

On November 3, 2019, Plaintiff sent a staff complaint, KVSP-0-19-04219 (4219) to the Kern Valley State Prison (KVSP) appeals office.

On November 5, 2019, Defendant C. Gonzales returned appeal KVSP 4219 instructing Plaintiff to remove the allegation of retaliation for the appeal to be processed.

On November 7, 2019, Plaintiff returned KVSP 4219 after he removed the word "retaliation."

On November 14, 2019, Plaintiff sent a complaint against T. Rodriguez for retaliation.

On November 18, 2019, C. Gonzales canceled the appeal by way of appeal KVSP-0-19-4360 (4360).

On November 27, 2019, Plaintiff resubmitted KVSP 4360 and it was canceled (erroneously) as duplicative of KVSP 4219.

On December 20, 2019, Plaintiff appealed the cancellation of KVSP 4360, which was canceled by C. Gonzalez on December 26, 2019 by way of appeal KVSP-0-19-04814.

On December 23, 2019, Plaintiff resubmitted KVSP 4219 for the second level review.  A. Leyva returned the appeal as canceled instructing Plaintiff to remove the retaliation allegation before the appeal could be processed.

On January 21, 2020, Plaintiff submitted an inmate request for interview.

On or about January 22, 2020, Plaintiff submitted a staff complaint against appeals

1    coordinators A. Leyva and C. Gonzalez.

2    On January 24, 2020, C. Gonzalez canceled appeal KVSP-0-20-00277 (KVSP 0277)
3    instructing to remove the word retaliation.

4    On or about January 29, 2020, Plaintiff returned KVSP 0277 to Chief of Appeals R Diaz
5    giving notice that KVSP appeals coordinators were interfering with Plaintiff's attempt to file a
6    complaint for retaliation against them.

7    On February 10, 2020, the Office of Appeals acknowledged receipt of KVSP 0277.

8    On February 24, 2020, A. Leyva responded to KVSP 00277 against Leyva instructing
9    Plaintiff to follow instructions on CDC 695 form dated January 24, 2020 for further processing
10   wherein it instructed removal of the word retaliation.

11   On February 26, 2020, Plaintiff sent KVSP 00277 for third level review, and it was again
12   returned to Plaintiff to follow instructions.  Plaintiff resubmitted the appeal on April 28, 2020,
13   but it was returned on May 13, 2020 by A. Leyva stating, "Be advised that these documents are
14   being returned to you as they are not an appeal."

15   On or about May 13, 2020, Plaintiff returned the staff complaint against the appeals
16   coordinators.  On June 5, 2020, he received a response from C. Gonzalez, which stated to
17   remove the word retaliation.

18   Defendants C. Gonzalez and A. Leyva acting as appeals coordinators refused to process
19   grievances that did not conform to their personal belief of acceptable content, i.e. removal of the
20   word "retaliation."

21       **B.**    **Statement of Undisputed Facts[2]**

22       1.    Plaintiff is a California prisoner proceeding pro se. (ECF No. 11.)

23       2.    In 2019 and 2020, Defendants Gonzales and Leyva were Grievance Coordinators
24   at Kern Valley State Prison. (Declaration of Leyva (Leyva Decl.) ¶ 2; Declaration of Gonzales
25   (Gonzales Decl.) ¶ 2.)

26       3.    As Grievance Coordinators, Defendants were tasked with screening, logging, and
27   processing non-healthcare related inmate grievances in accordance with the California

---

[2] Hereinafter referred to as "UF."

4

1  Department of Corrections and Rehabilitation's (CDCR) prison administrative grievance process.

2  (Leyva Decl. ¶ 3; Gonzales Decl. ¶ 3.)

3      4.    CDCR's prison administrative grievance process outlined in title 15 of the

4  California Code of Regulations allows inmates to "appeal any policy, decision, action, condition,

5  or omission by the department or its staff that the inmate or parolee can demonstrate as having a

6  material adverse effect upon his or her health, safety, or welfare." (Leyva Decl. ¶ 4; Cal. Code

7  Regs. tit. 15, § 3084.1(a) (2019).)[3]

8      5.    Prior to June 10, 2020, prisoners were required to follow the procedures set forth

9  in sections 3084.1 through 3085 of title 15 of the California Code of Regulations when filing an

10 administrative grievance (formally referred to as an appeal). (Leyva Decl. ¶ 4.)

11     6.    Inmates initiated CDCR's inmate grievance process by submitting a CDCR Form

12 602. (Leyva Decl. ¶ 5; Cal. Code Regs. tit. 15, § 3084.2.)

13     7.    When completing and submitting a CDCR Form 602, the inmate was required to

14 follow the procedures set forth in title 15 of the California Code of Regulations, sections 3084.1

15 through 3085, which included describing the problem, naming involved staff members, and

16 identifying the action requested on the grievance form. (Leyva Decl. ¶ 5; Cal. Code Regs. tit. 15,

17 § 3084.2.)

18     8.    This grievance and appeal process had three levels of review, beginning at the first

19 level when an inmate submitted a CDCR Form 602 grievance to the Grievance Coordinator at the

20 institution. (Leyva Decl. ¶ 6; Cal. Code Regs. tit. 15, § 3084.7.)

21     9.    In November 2019 through June 10, 2020, a grievance that did not comply with

22 certain California Code of Regulations governing the grievance process was rejected and returned

23 with the reason for the rejection and instructions to correct the defect if correction was possible.

24 (Leyva Decl. ¶ 7; Cal. Code Regs. tit. 15, § 3084.6.)

25     10.    A grievance that was rejected could later be accepted if the reason noted for the

26 objection was corrected and the grievance was returned by the inmate to the grievance

---

[3] Plaintiff's grievances at issue in this case were filed prior to June 10, 2020. Accordingly, all citation to title 15 of the California Code of Regulations are to the 2019 version that was in effect when Plaintiff filed his relevant grievances.

coordinator within 30 calendar days of the rejection. (Leyva Decl. ¶ 7; Cal. Code Regs. tit. 15, § 3084.6.)

11. In November 2019 through June 10, 2020, a grievance was improper and rejected for the following reasons outlined in California Code of Regulations Title 15, section 3084.6 (b). (Leyva Decl. ¶ 7.)

12. Under California Code of Regulations, title 15, section 3084.6(b)(8), a Grievance Coordinator was directed to reject a grievance if an inmate alleged multiple issues that do not derive from one single event. (Leyva Decl. ¶ 8.)

13. If a grievance alleging an issue was screened-in for review, the grievance would be assigned to a staff member with particularized knowledge of the issue who could review the alleged issue, investigate the inmate's allegations, and provide a determination as to how the alleged issue should be resolved. (Leyva Decl. ¶ 8.)

14. California Code of Regulations, title 15, section 3084.6(b)(8) ensured that prison officials could conduct focused inquiries into each issue alleged by an inmate and provide separate and comprehensive responses that fully addressed each of the inmate's allegations. (Leyva Decl. ¶ 8.)

15. California Code of Regulations, title 15, § 3084.6(b)(6), directed a Grievance Coordinator to reject a grievance if the inmate's allegations lacked factual evidence and specific detail.[4] (Leyva Decl. ¶ 9.)

16. California Code of Regulations, title 15, § 3084.6(b)(6) ensured that prison officials could conduct informed inquiries into each issue alleged by an inmate and provide comprehensive responses that fully addressed the inmate's allegations. (Leyva Decl. ¶ 9.)

17. California Code of Regulations, title 15, § 3084.6(b)(3), directed a Grievance Coordinator to reject a grievance if the inmate exceeded the number of allowed grievances in a fourteen-calendar day period. (Leyva Decl. ¶ 10.)

18. Under California Code of Regulations, title 15, § 3084.6(b)(3), an inmate or parolee had the right to file one grievance every 14 calendar days unless the grievance was

---

[4] Plaintiff's objection does not materially dispute this statement.

1   accepted as an emergency grievance. (Leyva Decl. ¶ 10.)

2       19.    California Code of Regulations, title 15, § 3084.6(b)(3) helped to prevent inmate
3   abuse of the grievance process by preventing inmates from inundating the grievance process with
4   frivolous grievances. (Leyva Decl. ¶ 10.)

5       20.    In the year 2019 alone, KVSP received 4,875 inmate grievances. (Leyva Decl. ¶
6   10.)

7       21.    California Code of Regulations, title 15, § 3084.6(b)(16) directed a Grievance
8   Coordinator to reject a grievance if the inmate appealed it to a higher level of review with a
9   changed issue on appeal. (Leyva Decl. ¶ 11.)

10       22.    California Code of Regulations, title 15, § 3084.6(b)(16) worked to prevent inmate
11   abuse of the grievance process through circumventing the required three levels of review. (Leyva
12   Decl. ¶ 11.)

13       23.    California Code of Regulations, title 15, § 3084.6(b)(16) also helped to ensure that
14   prison officials could conduct informed inquiries into each issue alleged by the inmate and
15   provide comprehensive responses that fully addressed the inmate's allegations at each level of
16   review. (Leyva Decl. ¶ 11.)

17       24.    If an inmate's alleged issue was one that could be resolved, California Code of
18   Regulations, title 15, § 3084.6(b)(16) helped to ensure that the issue would be resolved at the
19   lowest possible level of review, thereby conserving CDCR's time and resources. (Leyva Decl. ¶
20   11.)

21       25.    A grievance could also be canceled for the reasons outlined in California Code of
22   Regulations, title 15, section 3084.6 (c). (Leyva Decl. ¶ 12.)

23       26.    Under California Code of Regulations, title 15, § 3084.6(c)(2), a Grievance
24   Coordinator was directed to cancel a grievance if it was duplicative of a previous grievance where
25   a decision was already rendered or pending. (Leyva Decl. ¶ 13.)

26       27.    California Code of Regulations, title 15, § 3084.6(c)(2) worked to preserve the
27   efficiency of the grievance process by preventing Grievance Coordinators from needing to
28   address the same issue multiple times. (Leyva Decl. ¶ 13.)

28.     California Code of Regulations, title 15, § 3084.6(c)(2) prevented inmate abuse of the grievance process by discouraging inmates from resubmitting duplicative grievances after receiving unfavorable decisions at first, second, or third level of review. (Leyva Decl. ¶ 13.)

29.     A grievance that was canceled could not be resubmitted, but an inmate could appeal the cancelation if he/she felt the cancelation was in error. (Leyva Decl. ¶ 13; Cal. Code Regs. tit. 15, § 3084.6.)

30.     When Grievance Coordinators rejected or canceled an inmate's grievance, the Grievance Coordinator would issue the rejection or cancelation, along with the reason for the rejection or cancellation and any instruction to correct the defect in a CDCR Form 695, which is commonly referred to as a screen-out letter. (Leyva Decl. ¶ 14.)

31.     Grievance Coordinators classified issues alleged in inmate grievances into several separate and distinct categories, which include the property category and staff complaint category. (Leyva Decl. ¶ 15.)

32.     Occasionally, when it was unclear to a Grievance Coordinator whether to classify the issue alleged in a grievance as a staff complaint or under another category, the Grievance Coordinator would refer the grievance to the Hiring Authority, an office separate from the office of the Grievance Coordinator, for a determination. (Leyva Decl. ¶ 16.)

33.     If the Hiring Authority determined that a grievance should not be processed as a staff complaint, the Grievance Coordinator would categorize the issue alleged in the grievance under a separate category based on underlying facts and process the grievance accordingly. (Leyva Decl. ¶ 16.)

34.     On November 3, 2019, Plaintiff submitted Grievance Log No. KVSP-O-19-04219 (04219 grievance). (Leyva Decl. ¶ 18; Gonzales Decl. ¶ 5.)

35.     The November 5, 2019 screen-out letter rejecting the 04219 grievance instructed that, if Plaintiff wanted to amend the grievance for a staff misconduct issue as opposed to a property issue, he would need to include additional facts specific to the circumstance of his intentional retaliation allegations. (Leyva Decl. ¶ 20; Gonzales Decl. ¶ 7.)

36.     The November 5, 2019 screen-out letter rejecting the 04219 grievance instructed

1  Plaintiff that, if he could not include additional information regarding the staff misconduct issue,
2  he should remove his generalized staff misconduct allegation so that his grievance could be
3  processed on the remaining property issue. (Leyva Decl. ¶ 20; Gonzales Decl. ¶ 7.)

4    37.    On November 7, 2019, Plaintiff resubmitted the 04219 grievance for first level
5  review with his generalized allegations of intentional retaliation removed, such that the grievance
6  only reflected the property issue of Plaintiff being improperly denied access to his religious
7  medallion due to it being deemed unallowable property. (Leyva Decl. ¶ 21; Gonzales Decl. ¶ 9.)

8    38.    On or around December 29, 2019, Plaintiff resubmitted the '04219 grievance for
9  second level of review. (Leyva Decl. ¶ 22; Gonzales Decl. ¶ 10.)

10   39.    Plaintiff resubmitted the 04219 grievance for second level of review after
11 removing his generalized allegations pertaining to intentional retaliation, leaving only his
12 allegation of being improperly denied access to his property. (Leyva Decl. ¶ 23; Gonzales Decl. ¶
13 11.)

14   40.    On January 21, 2020, the 04219 grievance was accepted, reviewed, and denied at
15 the second level. (Leyva Decl. ¶ 23; Gonzales Decl. ¶ 11.)

16   41.    On April 9, 2020, Plaintiff submitted the 04219 grievance for third level review.
17 (Leyva Decl. ¶ 24; Gonzales Decl. ¶ 12.)

18   42.    On September 2, 2020, the 04219 grievance was screened-in, reviewed, and denied
19 at the third level. (Leyva Decl. ¶ 24; Gonzales Decl. ¶ 12.)

20   43.    On November 27, 2019, Mitchel resubmitted Grievance Log No. KVSP-O-19-
21 (04360 grievance) for first level of review. (Leyva Decl. ¶ 26; Gonzales Decl. ¶ 14.)

22   44.    On December 20, 2019, Plaintiff submitted Grievance Log No. KVSP-O-19-04814
23 (04818 grievance), alleging that the 04360 grievance was erroneously canceled. (Leyva Decl. ¶
24 28; Gonzales Decl. ¶ 16.)

25   45.    On January 22, 2020, Plaintiff submitted Grievance Log No. KVSP-O-20-00277
26 (00277 grievance), alleging that Defendants Leyva and Gonzales refused to process Plaintiff's
27 04219 grievance because of his use of the word "retaliation." (Leyva Decl. ¶ 29; Gonzales Decl. ¶
28 17.)

**C.     Analysis of Defendants' Motion**

As previously stated, Plaintiff alleges that his grievances were improperly rejected because they contained the word "retaliation."

Defendants argue the undisputed evidence shows the grievances were rejected or canceled because Plaintiff alleged multiple facts that required separate grievance responses, exceeded the number of permitted appeals in a 14-day period, submitted duplicate appeals, and alleged facts lacking sufficient evidence and specific detail. Defendants also argue they are entitled to qualified immunity.

Speech is protected under the First Amendment, unless it falls under one of a few narrowly defined categories of unprotected speech. R.A.V. v. City of St. Paul, 505 U.S. 377, 382–84 (1992). The Ninth Circuit has held that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing Bradley v. Hall, 64 F.3d 1276, 1281–82 (9th Cir. 1995) ). In Turner v. Safley, the United States Supreme Court held that a prison regulation that restricts inmates' constitutional rights could be constitutionally sound if it "is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). Turner requires that a valid regulation must (1) be content neutral, (2) logically advance proper goals such as institutional security and safety, and (3) not be an exaggerated response in relation to those goals. Id. at 93. The Supreme Court later clarified that a prison regulation is considered to be content neutral if its purpose is "unrelated to the suppression of expression." Thornburgh v. Abbott, 490 U.S. 401, 415 (1989) (quoting Procunier v. Martinez, 416 U.S. 396, 413 (1974) ).

The Ninth Circuit recently established that a prison official's refusal to process a grievance that failed to conform to the official's "personal conception of acceptable content" constituted "content-based discrimination that runs contrary to the First Amendment protections." Richey v. Dahne, 733 Fed. Appx. 881, 883-84 (9th Cir. 2018).   The First Amendment prohibits State Defendants from refusing to process grievances because the language in the grievances fails to conform to the prison's conception of  acceptable content. Id. at 883-84.

Here, it is undisputed that on November 3, 2019, Plaintiff submitted Grievance Log No.

10

04219 grievance. (UF 34.)  The November 5, 2019 screen-out letter rejecting the '04219 grievance instructed that, if Plaintiff wanted to amend the grievance for a staff misconduct issue as opposed to a property issue, he would need to include additional facts specific to the circumstance of his intentional retaliation allegations. (UF 35.)  The November 5, 2019 screen-out letter rejecting the 04219 grievance instructed Plaintiff that, if he could not include additional information regarding the staff misconduct issue, he should remove his generalized staff misconduct allegation so that his grievance could be processed on the remaining property issue. (UF 36.)

On November 7, 2019, Plaintiff resubmitted the 04219 grievance for first level review with his generalized allegations of intentional retaliation removed, such that the grievance only reflected the property issue of Plaintiff being improperly denied access to his religious medallion due to it being deemed unallowable property. (UF 37.)

On or around December 29, 2019, Plaintiff resubmitted the 04219 grievance for second level of review. (UF 38.)  Plaintiff resubmitted the 04219 grievance for second level of review after removing his generalized allegations pertaining to intentional retaliation, leaving only his allegation of being improperly denied access to his property. (UF 39.)

On January 21, 2020, the 04219 grievance was accepted, reviewed, and denied at the second level. (UF 40.)  On April 9, 2020, Plaintiff submitted the 04219 grievance for third level review. (UF 41.)  On September 2, 2020, the 04219 grievance was screened-in, reviewed, and denied at the third level. (UF 42.)

On November 27, 2019, Mitchel resubmitted the 04360 grievance for first level of review. (UF 43.)

On December 20, 2019, Plaintiff submitted 04814, alleging that the '04360 grievance was erroneously canceled. (UF 44.)

On January 22, 2020, Plaintiff submitted 00277, alleging that Defendants Leyva and Gonzales refused to process Plaintiff's 04219 grievance because of his use of the word "retaliation." (UF 45.)

///

11

1. <u>04219 Grievance</u>

In 04219 Plaintiff alleged as follows:

> On 11/1/19, c/o Rodriguez brought to my cell door a box, he opened the box and it had my religious medallion and chain inside of it. C/O Rodriguez knew it came from RJ Donovan and was returned to me as a result of RJD-B-19-05703. C/O Rodriguez then said "you can't have this don't trip I going to put it in a box." I asked C/O Rodriguez why I could not have it and he responded because I said you can't have it!" I asked him for a receipt and he said "who gave you your property?" I said "J. Martinez" and C/O Rodriguez just walked away with a smile on his face. When I first arrived at ASU #1 on or about 9/27/19 C/O Rodriguez who was the property officer at that time refused to give me any of my legal and or personal property. I filed a CDC 602/Complaint as a result. My property was eventually given to me but I had to BANG on my cell door for a extended period of time before a regular officer C/O J. Martinez respectfully given it to me. I assumed C/O Rodriguez's behavior was incidental so I dropped the CDC 602. C/O Rodriguez's actions are intentional.

(Leyva Decl. Ex. A.)

In the action requested portion of the grievance, Plaintiff stated:

> Pursuant to CCR 15 § 3190(b) and § 3213(a)(B) I have a right to wear my religious medallion around my neck. The First Amendment protects this right which is intentionally be infringed upon by C/O Rodriguez. C/O Rodriguez is acting in retaliation to my record of complaints against officers, including but not limited to Plaintiff v. Davey, et al, 1:16-cv-01148-EPG. This is a staff complaint pursuant to CCR 15 § 3291(b) and Penal Code §3391(d) and injunctive relief has been sought under Plaintiff v. Davey, et al., 1:16-cv-01148-DAD-EPG, U.S. District Court E/District Fresno Div.

(<u>Id.</u>)

On November 5, 2019, the grievance was screened at the first level of review and returned to Plaintiff stating as follows:

> Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(8). Your appeal involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact. You may resubmit the unrelated issues separately using separate appeals. Be advised that you are still subject to the submission of one non-emergency appeal every 14 calendar days.
>
> You have documented multiple unrelated issues which cannot be responded to in a single appeal response. You have documented your dissatisfaction with your Religious Medallion which was deemed unallowable property in ASU1 and are making general allegations of staff misconduct. Amend (Do not rewrite) this appeal to reflect one issue and resubmit. Your allegation lacks factual evidence and specific detail which would lead to a clear indication staff misconduct occurred based on what is written in your appeal. If

>alleging staff misconduct, be specific to the circumstance of the allegation, (Date, time and location of incident, also identify by name and describe all involved parties of alleged incident/misconduct). Staff misconduct means staff behavior that violates or is contrary to law, regulation, policy, procedure, or an ethical or professional standard. If unable to do so please remove said allegations (HIGHLIGHTED) from this appeal and return your appeal for further processing. Also provide CDCR 1083 or purchase receipt for the Religious Medallion.

(Leyva Decl. Ex. A.)

Thus, the undisputed facts demonstrate that Plaintiff raised two separate issues—a property issue and a staff misconduct issue for alleged retaliation—in this one grievance. (Leyva Decl. ¶ 18; Gonzales Decl. ¶ 5, Pl. Dep. at 26-28, Krasiev-Dvornikov Decl., Ex. B at 3, 8.) Consequently, the grievance was properly rejected pursuant to section 3084.6(b)(8) which requires rejection of grievances documenting multiple issues. (Leyva Decl. ¶ 8; Cal. Code Regs. tit. 15, 3084.6(b)(8).)  These issues fell under separate categories because property issues pertain to the confiscation, damage, or loss of inmate property, whereas staff misconduct issues pertain to a staff member violating an inmate's constitutional, civil, or due process rights. (Leyva Decl. ¶ 15.)

The November 5, 2019 screen-out letter never instructed Plaintiff to remove the word "retaliation" from his grievance.  Rather, it instructed Plaintiff to choose the issue he elected to pursue in the grievance and provided detailed instructions on how to amend the 04219 grievance and provided detailed instructions on how to amend the 04219 grievance to present only one issue, e.g., property or staff misconduct issue. (Leyva Decl. ¶ 20, Gonzales Decl. ¶ 7.)  Plaintiff was also instructed to provide additional facts for clarification of the staff misconduct issue, if that was the issue to be presented for further review.  (Id.)   Thus, Plaintiff was not prevented from presenting his retaliation claim and was not required to remove the word "retaliation." (Leyva Decl. ¶ 20; Gonzalez Decl. ¶ 8.)  Consequently, the rejection and its instructions did not relate to the express of Plaintiff's word "retaliation."  (Leyva Decl. ¶¶ 20, 33; Gonzales Decl. ¶¶ 8, 21.)

On November 7, 2019, Plaintiff resubmitted 04219 with the generalized allegations of intentional retaliation removed; such that the grievance only reflected the property issue of

13

Plaintiff being improperly denied access to his religious medallion due to it being deemed unallowable property. (Leyva Decl. ¶ 21.) On December 18, 2019, 04219 was screened-in, reviewed, and denied at the first level regarding the property issue. (Id.)

Plaintiff resubmitted 04219 for second level review on or around December 29, 2019. (Leyva Decl. ¶ 22.) At the second level of review, he added his generalized allegations of retaliation alongside his allegations of being denied access to his property. (Id.) On January 2, 2020, Plaintiff was issued a screen-out letter rejecting 04219 for attempting to change the issue on appeal. (Id.)

Plaintiff resubmitted 04219 for second level review after removing his generalized allegations pertaining to intentional retaliation, leaving only his allegations of being improperly denied access to his property. (Leyva Decl. ¶ 23.) On January 21, 2020, 04219 was screened-in, reviewed, and denied at the second level. (Id.)

On April 9, 2020, Plaintiff submitted 04219 for third level review. (Leyva Decl. ¶ 24.) On September 2, 2020, 04219 was screened-in, reviewed, and denied at the third level. (Id.)

Defendants have met their burden of demonstrating that this grievance was denied based on a content neutral reason. The burden now shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

Plaintiff contends that this grievance was "rejected and canceled because he believed the word 'retaliation' best explained the facts and supported the specific details he enumerated as facts in his grievance." (ECF No. 53 at 23.) While the single term, "retaliation," is not on its own considered "multiple issues," it is undisputed that this grievance also contained a separate property issue regarding his religious medallion being deemed unallowable property. (ECF No. 53 at 6.) Indeed, Plaintiff submits that his religious medallion was confiscated because it was determined to be "contaminated and or a bio-hazard." (Id. at 9.)

Plaintiff's personal interpretation that Defendants' screen-out letter instructions mandated him to remove his allegation of retaliation by officer Rodriguez misconstrues the undisputed evidence. (ECF No. 53 at 14, 19.) On the contrary, it is undisputed that Plaintiff was

instructed in the grievance response letter to amend his grievance regarding non-party Officer Rodriguez to "reflect one issue and resubmit," whether it was the property issue or staff misconduct issue. (ECF No. 53 at 120.) The instructions continue to state that "if alleging staff misconduct, be specific to the circumstances of the allegation." (Id.) Plaintiff was instructed to remove his highlighted generalized staff misconduct allegation only in the event he could not supplement additional information—information Plaintiff concedes he had at the time. (ECF No. 53 at 46; 120.) Plaintiff therefore fails to dispute that Defendants instructions were intended to provide clarity to Plaintiff, as opposed to confuse him or mandate him to remove the word "retaliation."

        2.        04360 Grievance

Plaintiff submitted 04360 for first level review on November 14, 2019. (Leyva Decl. ¶ 25, Ex. B.) On November l8, 2019, Plaintiff was issued a screen-out letter rejecting 04360 for exceeding the number of allowed appeals in a 14-calendar day period. (Leyva Decl. ¶ 25.)

On November 27, 2019, Plaintiff submitted 04360 for first level review. (Leyva Decl. ¶ 26.) In 04360, Plaintiff complained about two issues: (1) that Plaintiff was improperly denied access to his property in the form of a religious medallion when it was deemed unallowable property; and (2) that a Correctional Officer Rodriguez engaged in staff misconduct by intentionally stealing Plaintiff's medallion as an act of retaliation against Plaintiff for his history of filing staff complaints against officers. (Id.) On December 6, 2019, 04360 was referred to the Hiring Authority for a determination whether to classify the grievance as an allegation of staff misconduct or a grievance alleging a property issue. (Id.) The Hiring Authority returned a determination to classify 04360 as a grievance alleging a property issue. (Id.)

On December 10, 2019, Plaintiff was issued a screen-out letter cancelling 04360 as directed by Cal. Code of Regs. tit., 15 §3084.6(c)(2), because the grievance was duplicative of 04219--both of these grievances alleged the same allegations regarding Plaintiff's improper denial of access to his property. (Leyva Decl. ¶ 27.)

Plaintiff contends that he submitted the grievances "in accordance with the number of permitted appeals in a 14-day period." (ECF No. 53 at 23-25.) However, Defendants have

15

submitted evidence, which Plaintiff has not refuted with admissible evidence, that this grievance was submitted on November 14, 2019—just seven days after he resubmitted 4219 for first level review on November 7, 2019. (Leyva Decl. ¶¶ 21, 25, Ex. B; Gonzales Decl. ¶¶ 9, 13, ECF No. 53 at 41.) Plaintiff also submitted 04814 on December 20, 2019--just eight days after submitting-04681. (Leyva Dec. ¶ 28, Ex. C.)

Plaintiff fails to provide any evidence demonstrating that the cancelation of 04360 as duplicative of 04219 was improper. (ECF No. 53 at 15-16, 24.) Plaintiff concedes that the two grievances each contained the same property and generalized staff misconduct allegations. (Leyva Decl. ¶ 18; Gonzales Decl. ¶ 5; Pl. Dep. at 26-28; Krasiev-Dvornikov Decl., Ex. B at 3, 8.) Although Plaintiff argues that he filed 04360 intending for it to be processed as a staff complaint, Plaintiff presents no evidence disputing that the Hiring Authority nevertheless returned a determination to classify 04360 as a property grievance. (ECF No. 53 at 15-16; Leyva Decl. ¶ 26; Gonzales Decl. ¶ 14.) Thus, Plaintiff provides no evidence demonstrating that, on receipt of the Hiring Authority's determination, Defendant Gonzales's cancelation of 04360 under Cal. Code Regs. tit. 15 § 3084.6(c)(2) was improper. (Leyva Decl. ¶ 27; Gonzales Decl. ¶ 15.)

In addition, Plaintiff fails to present evidence demonstrating that the cancellation of his appeal pursuant to 3084.6(b) was improper. Indeed, Plaintiff concedes he had additional information and particularized facts relating to non-party Rodriguez's alleged staff misconduct which could have been included in a grievance about that issue. (ECF No. 53 at 46.) Thus, Defendants properly requested Plaintiff supplement his generalized allegations of staff misconduct under 3084.6(b). (Leyva Decl. ¶ 20; Gonzales Decl. ¶ 7.)

In support of his argument, Plaintiff points to section 54100.25 of the Department of Operations Manual, which states "when an appeal is received alleging staff misconduct that also includes issues such as property complaints, classification actions, or other issues, the appeals coordinator will inform the inmate / parolee in writing that the appeal will be addressed as a "staff complaint", and that other appeal issues(s) may only be appealed separately and resubmitted if the intention is to seek resolution of those issues." (ECF No. 53 at 27, 171.) Contrary to Plaintiff's

contention, Defendants simply instructed him to supplement his generalized allegation of staff misconduct before it could be determined whether to classify it as a staff complaint. (Leyva Decl. ¶¶ 20, 29-30; Gonzales Decl. ¶¶ 7, 17-18.) The evidence before the Court demonstrates that rejection and cancelation of this grievance advanced legitimate institutional goals.

### 3. 04814 Grievance

Plaintiff submitted 04814 for first level review on December 20, 2019. (Leyva Decl. ¶ 28, Ex. C.) In 04814, Plaintiff alleged that 04360 was erroneously canceled as duplicative of the 04219 grievance. (Leyva Decl. ¶ 28.) On December 26, 2019, Plaintiff was issued a screen-out letter rejecting 04814 for exceeding the number of allowed appeals in a 14-calendar day period. Plaintiff filed 04681 on December 12, 2019--only eight days before filing 04814-prompting the rejection of this appeal. (Id.) Plaintiff never resubmitted 04814. (Id.) Plaintiff presents no evidence to contradict that this grievance was rejected for a content neutral-reason. In addition, there is no evidence that the rejection of this grievance was because it contained the word "retaliation." (Decl. Leyva ¶ 33; Decl. Gonzales ¶ 21.)

### 4. 00277 Grievance

Plaintiff submitted 00277 for-first level of review on January 22, 2020. (Leyva Decl. ¶ 29, Ex. D.) In 00277, Plaintiff alleged that Defendants Gonzales and Leyva refused to process 04219 because of his use of the word "retaliation." On January 24, 2020, Plaintiff was issued a screen-out letter rejecting 00277 for his generalized allegations lacking sufficient factual evidence and specific detail which would lead to a clear indication staff misconduct occurred. The screen-out letter dated January 24, 2020, requested Plaintiff to provide additional information and clarification regarding his allegations of staff misconduct.

Plaintiff argues the rejection letter for this grievance on its face supports his claim that Defendants' rejection and cancellations were intended to hinder and confuse him. (ECF No. 53 at 28.) However, this grievance was rejected because it violated the rule against allegations which lack factual evidence and specific detail. (Leyva Decl. ¶¶ 29-30; Gonzales Decl. ¶¶ 17-18.)

Plaintiff resubmitted this grievance twice, each time alleging the same generalized allegations of staff misconduct. (Leyva Decl. ¶ 30; Gonzales Decl. ¶ 18.) On February 24, 2020,

Plaintiff was issued a screen-out letter rejecting 00277 for his generalized allegations lacking sufficient factual evidenced and specific detail. The instructions on the screen-out letter dated February 24, 2020, directed Plaintiff to follow the instruction detailed on the screen-out letter dated January 24, 2020, requesting Plaintiff to supplement additional information. On April 21, 2020, Plaintiff was issued a screen-out letter rejecting 00277 for his generalized lacking sufficient factual-evidence and specific detail. The instructions on screen-out letter dated April 21, 2020, directed Plaintiff to follow the instruction detailed on screen-out letter dated January 24, 2020, requesting Plaintiff to supplement additional information. The screen-out letters dated January 24, 2020, February 24, 2020, and April 21, 2020; did not direct Plaintiff to remove the word "retaliation" from 00277 in order for it to be processed.

On May 13, 2020, 00277 was again canceled stating that because 04219 was rejected it could not be appealed and Plaintiff was advised to take the necessary corrective action and resubmit the appeal within the timeframes specified in section 3084.6(a). (ECF No. 54 at 47.)

On June 5, 2020, Grievance Log MCSP-O-20-01769 (01769) was rejected pursuant to 3084.6(b)(8) because it involved multiple issues that did not derive from a single event, or were not directly related and could not be reasonably addressed in a single response. Plaintiff was instructed to resubmit the unrelated issues separately using separate appeals. Plaintiff was further advised that he raised two separate issues on involving personal property and the other regarding a general allegation of staff misconduct which was addressed in a previous appeal. Plaintiff was instructed to remove the highlighted text to address his property issue and resubmit.

Grievance 00277 was originally issued 01769 prior to it being forwarded to Kern Valley State Prison from Mule Creek State Prison for review at the first level. (Leyva Decl. ¶ 31; ECF No. 53 at 151.) Thus, 00277 has no relation to 01769. (Id.)

Lastly, this case is distinguishable from Richey, where a defendant-prison official refused to process a plaintiff-inmate's grievance until the plaintiff removed "objectionable commentary" regarding a guard's weight. Richey v. Dahne, 733 Fed. Appx. 881, 882 (9th Cir. 2018). There, the defendant's rejection was based on language he considered disrespectful within the grievance's allegations that did not satisfy the defendant's sense of propriety, thereby constituting content-

based discrimination. Id. at 883-84.  Here, on the other hand, Defendants never instructed Plaintiff to remove any language they considered objectionable. (Leyva Decl. ¶¶ 33-34; Gonzales Decl. ¶¶ 21-22.)  Defendants rejected and canceled Plaintiff's grievances because the grievances did not conform with governing title 15 regulations, irrespective of Plaintiff's use of the word "retaliation."  (Id.) Defendants' screen-out letters merely identified separate issues contained within Plaintiff's grievances, and provided instructions on how Plaintiff could allege those issues in a manner that did not fall under the rejection criteria of title 15 regulations.  (Id.)  Merely returning a grievance to an inmate or asking the inmate to rewrite it to address a single issue is not a violation of the right to petition for redress.  Richy, 733 Fed. Appx. at 883.  However, if the official action stops the grievance process by refusing to accept such grievance, a violation may be shown.  Williams v. Fox, No. 1:16-cv-00143-EJL, 2017 WL 916432, at *5-6 (D. Idaho Mar. 7, 2017.)  In this case, an outright refusal of Plaintiff's grievance by Defendants did not occur.  Rather, Plaintiff was instructed that he could resubmit any unrelated issues separately using separate appeals.  (ECF No. 54 at 48.)  Accordingly, Defendants' motion for summary judgment on the merits of Plaintiff's claim shall be granted.[5]

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED; and
2. The Clerk of Court is directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.

Dated:  **June 5, 2025**

STANLEY A. BOONE
United States Magistrate Judge

---

[5] In light of this finding, the Court does not reach the issue of qualified immunity.

19